SLT:BGK
F.#2011R00736/NY-NYE-673

- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

LANCE MOSKOWITZ
LORIANN MOSKOWITZ
ANTHONY SAVARESE and
JASON TORCHIO
           Defendants.

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    -against-

THE PREMISES KNOWN AND
DESCRIBED AS 20 TOPSIDE
LANE, STATEN ISLAND, NEW
YORK AND ANY CLOSED
OR LOCKED CONTAINERS THEREIN,

THE PREMISES KNOWN AND
DESCRIBED AS A SAFE DEPOSIT
BOX, NUMBER 140, LOCATED AT
TD BANK, 4401 AMBOY ROAD,
STATEN ISLAND, NEW YORK AND
ANY CLOSED OR LOCKED CONTAINERS
THEREIN, and

THE PREMISES KNOWN AND
DESCRIBED AS A SAFE DEPOSIT
BOX, NUMBER 228, LOCATED AT
TD BANK, 126 PAGE AVENUE, STATEN
ISLAND, NEW YORK AND ANY CLOSED
OR LOCKED CONTAINERS THEREIN,

- - - - - - - - - - - - - - - - -X

**M 11-1057**

SEALED AFFIDAVIT AND
COMPLAINT IN SUPPORT OF
APPLICATION FOR
ARREST WARRANTS AND
SEARCH WARRANTS

(21 U.S.C. § 846)

EASTERN DISTRICT OF NEW YORK, SS:

      GIOVANNA CITTI, being duly sworn, deposes and states

that she is a Special Agent with the Drug Enforcement

Administration ("DEA"), duly appointed according to law and acting as such.

Upon information and belief, on or about and between January 2009 and June 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LANCE MOSKOWITZ, LORIANN MOSKOWITZ, ANTHONY SAVARESE AND JASON TORCHIO, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing oxycodone, a Schedule II narcotic drug, in violation of 21 U.S.C. § 841(a)(1).

(Title 21, United States Code, Section 846).

Upon information and belief, there is probable cause to believe that there is located at THE PREMISES KNOWN AND DESCRIBED AS 20 TOPSIDE LANE, STATEN ISLAND, NEW YORK AND ANY CLOSED OR LOCKED CONTAINERS THEREIN ("SUBJECT PREMISES #1"), THE PREMISES KNOWN AND DESCRIBED AS A SAFE DEPOSIT BOX, NUMBER 228, LOCATED AT TD BANK, 126 PAGE AVENUE, STATEN ISLAND, NEW YORK AND ANY CLOSED OR LOCKED CONTAINERS THEREIN ("SUBJECT PREMISES #2"); and THE PREMISES KNOWN AND DESCRIBED AS A SAFE DEPOSIT BOX, NUMBER 140, LOCATED AT TD BANK, 4401 AMBOY ROAD, STATEN ISLAND, NEW YORK AND ANY CLOSED OR LOCKED CONTAINERS THEREIN, ("SUBJECT PREMISES #3") (collectively, the "SUBJECT PREMISES") fruits,

evidence, and instrumentalities of narcotics trafficking in violation of Title 21, United States Code, Sections 841 and 846.

The source of your deponent's information and the grounds for her belief are as follows:[1]

1.  I have been a Special Agent with the DEA for approximately two years.  My information in this case comes from a review of DEA records, conversations with other agents, and my direct participation in the investigation.

I.  Background

2.  On September 10, 2008, LANCE MOSKOWITZ was sentenced before Judge Weinstein in the Eastern District of New York to five years probation for conducting an illegal gambling operation.  See United State v. Lance Moskowitz, 08-CR-76 (JBW). On January 8, 2009, while on probation, LANCE was arrested by the New York City Police Department for criminal possession cocaine. On April 24, 2009, LANCE MOSKOWITZ pled guilty to violating his federal probation and was sentenced by Judge Weinstein to three years imprisonment which he is serving in the Federal Correctional Institution in Fairton, New Jersey.[2]

---

[1] Because the purpose of this affidavit is to state only probable cause to arrest and search, I have not described all the relevant facts and circumstances of which I am aware.

[2] On February 12, 2003, LANCE MOSKOWITZ was arrested for possession of a controlled dangerous substance in Jersey City, New Jersey.  This arrested stemmed from information provided by a confidential informant ("CI") that LANCE MOSKOWITZ could provide the CI with Vicodin tablets.  LANCE MOSKOWITZ was subsequently

3

3.    During the period August 2010 through June 2011,
DEA obtained recorded prison telephone calls and emails of LANCE
MOSKOWITZ from the Bureau of Prisons.  Based on these recorded
prison calls, I believe that LANCE MOSKOWITZ is the leader of an
organization that distributes oxycodone pills.[3]  Further, these
calls and emails reveal that LANCE MOSKOWITZ ("LANCE") and his
sister, LORIANN MOSKOWITZ ("LORIANN"), communicate almost daily
about drug distribution activities.[4]  Based on these recorded
calls, I believe that LORIANN manages the day to day operation of
the organization while LANCE is incarcerated.  This includes
LORIANN coordinating doctor's appointments with various
individuals to obtain oxycodone pills and distributing oxycodone
pills to street distributors.  ANTHONY SAVARESE and JASON TORCHIO
obtain oxycodone prescriptions for use by the organization and
sell oxycodone pills for the Moskowitz organization.

---

arrested.  At the time of his arrest, LANCE MOSKOWITZ illegally
possessed 12.5 Vicodin tablets.  LANCE MOSKOWITZ subsequently
pled guilty to possession of a controlled dangerous substance and
was sentenced on February 27, 2004 in the Superior Court in New
Jersey to two years probation, six months driver license
suspension, 100 hours of community service and fines.

[3] Based on my experience and training, I know that oxycodone is
a schedule II narcotic analgesic and is prescribed by doctors for
the relief of pain. It is similar to morphine.

[4] LANCE contacts LORIANN at LORIANN's place of employment, Act
Ambulette, Inc.

4

## II.  Probable Cause to Arrest LORIANN MOSKOWITZ

4.    Recorded prison telephone calls between LANCE and LORIANN reveal that LORIANN, in addition to reporting the status of the organization to LANCE, also obtained oxycodone prescriptions for distribution.  The investigation further revealed that LORIANN obtained a portion of her oxycodone supply by doctor-shopping, i.e., filling prescriptions for oxycodone from several doctors during overlapping periods.  During the course of the investigation, DEA obtained records from the New York State Bureau of Narcotics regarding the number of oxycodone pills purchased by LORIANN at licensed pharmacies during the period January 2009 through April 2011.  During this period, LORIANN MOSKOWITZ purchased 5,700 oxycodone pills as follows:

| Date of Prescription Received | Prescriber | Number of Pills Prescribed | Date Filled | Pharmacy Used | Payment |
|---|---|---|---|---|---|
| 01/05/2009 | Drivas | 150 | 01/05/2009 | Delco Pharmacy | Insurance |
| 02/02/2009 | Drivas | 150 | 02/02/2009 | Delco Pharmacy | Insurance |
| 02/24/2009 | Anderson | 180 | 02/24/2009 | Midland Pharmacy | N/A |
| 03/12/2009 | Drivas | 150 | 03/12/2009 | Delco Pharmacy | Insurance |
| 03/27/2009 | Anderson | 180 | 03/27/2009 | Midland Pharmacy | Insurance |
| 04/07/2009 | Drivas | 150 | 04/07/2009 | Delco Pharmacy | Insurance |
| 04/30/2009 | Anderson | 180 | 04/30/2009 | Midland Pharmacy | Cash |
| 05/08/2009 | Drivas | 120 | 05/08/2009 | Delco Pharmacy | Insurance |
| 06/05/2009 | Anderson | 180 | 06/05/2009 | Delco Pharmacy | Insurance |
| 06/09/2009 | Drivas | 120 | 06/09/2009 | Midland Pharmacy | Cash |
| 07/08/2009 | Anderson | 180 | 07/08/2009 | Delco Pharmacy | Insurance |
| 07/13/2009 | Drivas | 150 | 07/13/2009 | Midland Pharmacy | Cash |
| 08/06/2009 | Anderson | 180 | 08/06/2009 | Delco Pharmacy | Insurance |
| 08/10/2009 | Helal | 240 | 08/10/2009 | Delco Pharmacy | Cash |
| 08/13/2009 | Drivas | 150 | 08/13/2009 | Midland Pharmacy | Cash |
| 09/14/2009 | Drivas | 150 | 09/14/2009 | Midland Pharmacy | Cash |
| 09/16/2009 | Anderson | 180 | 09/16/2009 | Delco Pharmacy | Insurance |
| 10/13/2009 | Drivas | 150 | 10/13/2009 | Midland Pharmacy | Cash |
| 10/21/2009 | Anderson | 180 | 10/21/2009 | Delco Pharmacy | Insurance |

5

| 11/11/2009 | Drivas | 150 | 11/11/2009 | Midland Pharmacy | Cash |
|---|---|---|---|---|---|
| 02/19/2010 | Santiamo | 180 | 02/19/2010 | Midland Pharmacy | Insurance |
| 03/19/2010 | Santiamo | 180 | 03/19/2010 | Midland Pharmacy | Insurance |
| 04/20/2010 | Santiamo | 180 | 04/20/2010 | Midland Pharmacy | Insurance |
| 05/18/2010 | Santiamo | 180 | 05/18/2010 | Midland Pharmacy | Insurance |
| 06/17/2010 | Santiamo | 180 | 06/17/2010 | Midland Pharmacy | Insurance |
| 07/22/2010 | Santiamo | 180 | 07/22/2010 | Midland Pharmacy | Insurance |
| 08/19/2010 | Santiamo | 180 | 08/19/2010 | Midland Pharmacy | Insurance |
| 09/20/2010 | Santiamo | 180 | 09/20/2010 | Midland Pharmacy | Insurance |
| 10/21/2010 | Santiamo | 180 | 10/21/2010 | Midland Pharmacy | Insurance |
| 11/19/2010 | Santiamo | 180 | 11/19/2010 | Midland Pharmacy | Insurance |
| 12/23/2010 | Santiamo | 180 | 12/23/2010 | Midland Pharmacy | Insurance |
| 01/26/2011 | Santiamo | 180 | 01/26/2011 | Midland Pharmacy | Insurance |
| 02/28/2011 | Santiamo | 180 | 02/28/2011 | Midland Pharmacy | Insurance |
| 03/25/2011 | Santiamo | 180 | 03/25/2011 | Midland Pharmacy | Insurance |
| 04/21/2011 | Santiamo | 180 | 04/21/2011 | Midland Pharmacy | Insurance |

5.    Further, recorded prison calls between LANCE and
LORIANN revealed that LORIANN obtained oxycodone pills from
pharmacies in New Jersey.[5]  For example, in a recorded prison
telephone call on February 18, 2011, LORIANN informed LANCE that
she "saw Carl last night."  Based on my experience, training and
knowledge of this investigation to date, I believe that when
LORIANN referred to "Carl," she was referring to Dr. Carl
Anderson.  Further, LORIANN's mobile telephone records

_____

[5]There is no system in the State of New Jersey similar to the
system maintained by the New York State Bureau of Narcotics that
provides data on the number of oxycodone pills purchased by an
individual at licensed pharmacies during the years 2010 and 2011.

corroborate this.[6/]   On February 18, 2011, LORIANN placed two telephone calls from her mobile telephone to Dr. Carl Anderson's Office.   In addition, on February 18, 2011, LORIANN placed two telephone calls from her mobile telephone to Raritan Bay Pharmacy in Perth Amboy, New Jersey.   Further, based on recorded prison telephone calls between LANCE and LORIANN, matters are discussed which include the fact that prescriptions LORIANN obtained from Dr. Carl Anderson are filled at Raritan Bay Pharmacy in New Jersey.   For example, in a recorded prison telephone call on February 18, 2011, LORIANN informed LANCE that she was going to "Jersey" and that LORIANN just saw "Carl" last night.   Based on my experience, training and knowledge of this investigation to date, I believe that LORIANN informed LANCE that she is going to Raritan Bay Pharmacy in New Jersey to have an oxycodone prescription written by Dr. Carl Anderson filled.

6.   A review of LORIANN's mobile telephone records revealed that LORIANN placed numerous calls from her mobile telephone to Dr. Carl Anderson, quickly followed by calls to Raritan Bay Pharmacy:

_____

[6/]Law enforcement obtained toll records for telephone number (347)215-4916, a mobile telephone issued by Verizon Wireless and subscribed to by Todd Moskowtiz, LORIANN MOSKOWITZ's brother ("LORIANN TELEPHONE").   I believe that the LORIANN TELEPHONE is used by LORIANN MOSKOWTIZ based on a recorded prison telephone call between LORIANN and LANCE.   During that call, LANCE requested LORIANN's "address," and LORIANN replied that her "address" was "215-4916."

| Date | Toll Records Revealed |
|------|----------------------|
| December 21, 2010 | 6 telephone calls placed to Dr. Carl Anderson |
| December 22, 2010 | 28 telephone calls placed to Dr. Carl Anderson |
| December 30, 2010 | 6 telephone calls placed to Raritan Bay Pharmacy |
| January 19, 2011 | 6 telephone calls placed to Dr. Carl Anderson |
| January 20, 2011 | 4 telephone calls placed to Raritan Bay Pharmacy |
| February 25, 2011 | 4 telephone calls placed to Raritan Bay Pharmacy |
| June 14, 2011 | 2 telephone calls placed to Dr. Carl Anderson |
| | 2 telephone calls placed to Raritan Bay Pharmacy |
| July 6, 2011 | 4 telephone calls placed to Dr. Carl Anderson |
| July 12, 2011 | 4 telephone calls placed to Dr. Carl Anderson |
| July 14, 2011 | 2 telephone calls placed to Dr. Carl Anderson |
| July 18, 2011 | 8 telephone calls placed to Dr. Carl Anderson |
| July 19, 2011 | 3 telephone calls placed to Dr. Carl Anderson |
| July 21, 2011 | 8 telephone calls placed to Dr. Carl Anderson |
| July 22, 2011 | 2 telephone calls placed to Raritan Bay Pharmacy |

As noted above, records obtained from the New York State Bureau
of Narcotics indicate that LORIANN received prescriptions for
oxycodone from Dr. Santiamo on December 12, 2010, January 26,
2011 and February 28, 2011.    Based on my experience, training
and knowledge of this investigation to date, I believe that when
LORIANN called Dr. Anderson on December 21, 2010, December 22,
2010, January 19, 2011 and February 25, 2011, it was for the
purpose of obtaining additional oxycodone prescriptions which she
then filled at Raritan Bay Pharmacy.

      7.    Moreover, on May 27, 2010 during a recorded prison
telephone call, LANCE and LORIANN discussed doctor-shopping.
Specifically, LANCE suggested to LORIANN that LORIANN try to make
an appointment to obtain oxycodone pills from Leonard Marchetta,
P.A.:

8

LANCE:      Do you know who you could try, LOR, he's not too far away from you.

LORIANN:    Who?

LANCE:      Marchetta

LORIANN:    That's the one on Seguine?

LANCE:      Yeah.

LORIANN:    Alright.

LANCE:      He's an assistant, and he'll maybe only do 90 but...

Leonard Marchetta's office is located at 5405 Hylan Blvd, Staten Island, New York, near Seguine Avenue. Based on my experience, training and knowledge of this investigation to date, I believe that when LANCE stated that "he's an assistant, and he'll maybe only do 90," LANCE is referring to the fact that Leonard Marchetta is a physician assistant and because of that, may only be allowed by law to prescribe 90 oxycodone pills at a time.

8. Based on my experience, training and knowledge of this investigation to date, I believe that LORIANN MOSKOWITZ structured the purchases of these oxycodone pills to illegally distribute them. This belief is based on: (1) the fact that the prescriptions for these pills were written by two different prescribers; (2) the fact that LORIANN used different pharmacies to fill her prescriptions; (3) the fact that LORIANN purchased some of these pills using insurance but others were bought with cash; (4) the quantity of oxycodone pills LORIANN

9

obtained; and (5) the recorded prison calls between LANCE and LORIANN.

III. Probable Cause to Arrest JASON TORCHIO

9.   Recorded prison calls between LANCE and LORIANN reveal that JASON TORCHIO distributed oxycodone pills on behalf of the Moskowitz organization.  On March 16, 2011 in a recorded prison telephone call between LANCE and LORIANN, based on my experience, training and knowledge of this investigation to date, I believe that LANCE and LORIANN discussed the fact that TORCHIO (referred to as "JASON" in this call) is losing his customer base because he over charged his customers for the oxycodone pills, and TORCHIO refused to give his customers discounts on their pill purchases.[2]  The following is, in substance and in part, an excerpt from this conversation:

> LORIANN:   Well Ronnie told me, Ronnie bar tends at
>            Goodfellas.
>
> LANCE:     Yeah.
>
> LORIANN:   He said Jason and Cari go in two, three time
>            a week!
>
> **(Later in the Call)**
>
> LANCE:     Everybody's still boycotting them?
>
> LORIANN:   Yeah.

---

[2] Toll records obtained by the LORIANN TELEPHONE reveal that, during the period October 2010 and August 2011, the LORIANN TELEPHONE made/or received over 350 calls to/from a mobile telephone subscribed to by JASON TORCHIO.

10

LANCE:      All the girls in the neighborhood?

LORIANN:    Yeah.  Ah, actually the girls quit.

LANCE:      Good.

LORIANN:    Yeah. They said that when they figured out
            how much money they gave him in the past
            couple of months, its ridiculous.

LANCE:      I don't blame them.  The fuck.

LORIANN:    Yeah, they said ah, I think in six months,
            like six grand.

LANCE:      That's crazy.

LORIANN:    Yeah, because they were buying, like daily.

LANCE:      Yeah.

LORIANN:    Which is ridiculous.

LANCE:      That's retarded.  And he wouldn't give no
            deals.

In addition, on November 8, 2010 in an email obtained from BOP,

LORIANN writes LANCE the following: "Jason is coming thru

tonight, so he says.  All else is good..." Based on my

experience, training and knowledge of this investigation to date,

I believe that LORIANN informed LANCE that LORIANN planned to

meet with JASON TORCHIO, and I believe that this meeting

concerned matters relating to their pill distribution.

        10.   During the course of this investigation, DEA

agents obtained records from the New York State Bureau of

Narcotics regarding the number of oxycodone pills purchased by

TORCHIO at licensed pharmacies during the period October 2009

through March 2011.  During this period, TORCHIO purchased over

5,000 30 milligram oxycodone pills as follows:

| Date of Prescription Received | Prescriber | Number of Pills Prescribed | Date Filled | Pharmacy Used | Payment |
|---|---|---|---|---|---|
| 10/21/2009 | Anderson | 180 (30mg) | 10/21/2009 | Midland Pharmacy | Insurance |
| 10/26/2009 | Drivas | 150 (30mg) | 10/27/2009 | Costco Store #316 | Cash |
| 11/18/2009 | Drivas | 150 (30mg) | 11/25/2009 | Costco Store #316 | Cash |
| 12/21/2009 | Santiamo | 180 (30mg) | 12/21/2009 | Midland Pharmacy | Insurance |
| 12/28/2009 | Drivas | 150 (30mg) | 12/28/2009 | Costco Store #316 | Cash |
| 01/21/2010 | Santiamo | 180 (30mg) | 01/21/2010 | Midland Pharmacy | Insurance |
| 01/25/2010 | Drivas | 150 (30mg) | 01/26/2010 | Costco Store #316 | Cash |
| 02/20/2010 | Santiamo | 180 (30mg) | 02/20/2010 | Midland Pharmacy | Insurance |
| 02/24/2010 | Drivas | 150 (30mg) | 02/25/2010 | Costco Store #316 | Cash |
| 03/22/2010 | Santiamo | 180 (30mg) | 03/22/2010 | Midland Pharmacy | Insurance |
| 03/25/2010 | Drivas | 150 (30mg) | 03/26/2010 | Costco Store #316 | Cash |
| 04/22/2010 | Santiamo | 180 (30mg) | 04/22/2010 | Midland Pharmacy | Insurance |
| 04/26/2010 | Drivas | 150 (30mg) | 04/26/2010 | Costco Store #316 | Cash |
| 05/22/2010 | Santiamo | 180 (30mg) | 05/22/2010 | Midland Pharmacy | Insurance |
| 05/26/2010 | Drivas | 150 (30mg) | 05/26/2010 | Costco Store #316 | Cash |
| 06/22/2010 | Santiamo | 180 (30mg) | 06/22/2010 | Midland Pharmacy | Insurance |
| 07/01/2010 | Drivas | 150 (30mg) | 07/01/2010 | Costco Store #316 | Cash |
| 07/23/2010 | Santiamo | 180 (30mg) | 07/23/2010 | Midland Pharmacy | Insurance |
| 08/04/2010 | Drivas | 150 (30mg) | 08/04/2010 | Costco Store #316 | Cash |
| 08/24/2010 | Santiamo | 180 (30mg) | 08/24/2010 | Midland Pharmacy | Insurance |
| 09/02/2010 | Drivas | 150 (30mg) | 09/02/2010 | Costco Store #316 | Cash |
| 09/22/2010 | Santiamo | 180 (30mg) | 09/22/2010 | Midland Pharmacy | Insurance |
| 10/01/2010 | Drivas | 150 (30mg) | 10/01/2010 | Costco Store #316 | Cash |
| 10/01/2010 | Drivas | 150 (30mg) | 10/13/2010 | Costco Store #318 | Cash |
| 10/22/2010 | Santiamo | 180 (30mg) | 10/12/2010 | Midland Pharmacy | Insurance |
| 11/08/2010 | Drivas | 150 (30mg) | 11/08/2010 | Costco Store #316 | Cash |
| 11/23/2010 | Santiamo | 180 (30mg) | 11/23/2010 | Midland Pharmacy | Insurance |
| 12/09/2010 | Drivas | 150 (30mg) | 12/09/2010 | Costco Store #316 | Cash |
| 12/23/2010 | Santiamo | 360 (15mg) | 12/23/2010 | Midland Pharmacy | Insurance |
| 01/10/2011 | Drivas | 150 (30mg) | 01/10/2011 | Costco Store #316 | Cash |
| 01/25/2011 | Santiamo | 360 (15mg) | 01/25/2011 | Midland Pharmacy | Insurance |
| 02/09/2011 | Drivas | 150 (30mg) | 02/19/2011 | Costco Store #316 | Cash |
| 02/21/2011 | Santiamo | 360 (15mg) | 02/21/2011 | Midland Pharmacy | Insurance |
| 03/11/2011 | Drivas | 150 (30mg) | 03/16/2011 | Costco Store #316 | Cash |
| 03/24/2011 | Santiamo | 360 (15mg) | 03/24/2011 | Midland Pharmacy | Insurance |

Based on my experience, training and knowledge of this investigation to date, I believe that TORCHIO structured the purchases of these oxycodone pills to illegally distribute them. This belief is based on: (1) the fact that the prescriptions for these pills were routinely written in close proximity from each other by two different prescribers; (2) the fact that TORCHIO routinely used two different pharmacies to fill his prescriptions; (3) the fact that TORCHIO purchased some of these pills using insurance and others with cash; (4) the quantity of oxycodone pills TORCHIO obtained; and (5) the recorded prison calls between LANCE and LORIANN that reference TORCHIO.

IV.   Probable Cause to Arrest ANTHONY SAVARESE

        11.   Recorded prison calls between LANCE and SAVARESE revealed that ANTHONY SAVARESE obtained oxycodone pills for distribution by the Moskowitz organization.  For example, on April 18, 2011, the following telephone call was recorded between LANCE and SAVARESE:

|        |        |
|--------|--------|
| SAVARESE: | Oh, not bad.  I'm gonna see Carl tonight. |
| LANCE: | Oh, your buddy! |
| SAVARESE: | Yup. |
| LANCE: | Yeah, that's alright.  I'm sure, I'm sure you're not as long as you used to be. |
| SAVARESE: | Yeah, its gotten better.  [U/I] Its gotten better.  Even you're sister said. |
| LANCE: | Hopefully my sister, he's say's, what he'll do with my sister. |

SAVARESE:    Oh yeah.  I'm gonna see your sister
             tonight.  So, I'm gonna go talk to her.

LANCE:       Oh, she'll be there?

SAVARESE:    No, I have to go pick up the, ah, the
             invitation.

LANCE:       Oh, I know.  Oh yeah.   I got you.

Based on my experience, training and knowledge of this
investigation to date, I believe that SAVARESE informed LANCE
that SAVARESE is going to see Dr. Carl Anderson (referred to as
"Carl").  Further, I believe that when SAVARESE states that
SAVARESE is going to pickup an "invitation" from LORIANN
(referred to as LANCE's "sister"), SAVARESE is referring to
oxycodone pills.

        12.  On February 3, 2011, the following recorded prison
telephone call occurred between LANCE and SAVARESE:

LANCE:       I've just been relaxing, you know trying to
             get things done, you know.  Just trying to
             get back on my feet, do…

SAVARESE:    Yeah, I went to go see Robert the other day
             he's an ass hole, ass hole.

LANCE:       Why?  What happened now?

SAVARESE:    Same thing, he gave, Same thing he gave me
             the same story.  I told your sister.

LANCE:       What?  He don't have it yet?

SAVARESE:    Yeah, and he doesn't know when he's getting
             them in.

LANCE:       Did he ever get them in last time?

14

SAVARESE:   Nope, never did.  I had to go see, I had to
            go see your girlfriend.

LANCE:      Yeah, I know, I know that.  So…

**(Later in the call)**

LANCE:      Very funny.  Um, what was I gonna say, so
            but I talked to my sister, she said she
            was gonna be on it to find a new place.

SAVARESE:   Yeah, no, I talked to her, she say's I'm
            working on it now Lance.  Don't worry
            about it, she says.  I'm like, alright.

LANCE:      She's just as pissed off as much as we
            are.

SAVARESE:   Oh, yes, she was, she goes, I don't know
            why he's being like that.

LANCE:      Because he's a fucking jerk off!

SAVARESE:   Because I know he had them.  Because
            [U/I]…

LANCE:      You know what?  He just likes to lose
            money.

SAVARESE:   Yeah.  I know he had them too.  Cuz I seen
            them, I seen them making them.

LANCE:      Everybody at Carl's talks about him.

SAVARESE:   Yep.  You gotta hear what they say about
            him.

LANCE:      Between them and Ocean Breeze.

SAVARESE:   Yeah.  Ah, whatchamacallit, Carl was
            asking for you, I said he's doing good.
            Cuz, I gotta, I have to go on a different
            day than your sister.

LANCE:      Yeah, I know.

SAVARESE:   Cuz of my days off.

15

LANCE:      Yeah, yeah, yeah.  How is old Carl?

SAVARESE:   He's asking that, he's like, ah,  [U/I]
            when is he coming back?  I said, he's back
            soon.  He goes, He's gotta come back and
            see me.  I'm like, he will.

LANCE:      No, I'm coming.  As soon as I get out,
            coming back.

Based on my experience, training and knowledge of this
investigation to date, I believe that SAVARESE informed LANCE of
the problem SAVARESE experienced with a pharmacy when SAVARESE
attempted to fill his oxycodone prescription.  In addition,
SAVARESE also informed LANCE that he saw Dr. Carl Anderson and
Dr. Anderson asked about LANCE.  Further, LANCE informed SAVARESE
that LORIANN (referred to as LANCE's "sister") is going to find
SAVARESE a new pharmacy (referred to as "new place") to fill his
oxycodone prescriptions.

        13.  During the course of this investigation, DEA
agents obtained records from the New York State Bureau of
Narcotics regarding the number of oxycodone pills purchased by
SAVARESE at licensed pharmacies during the period January 2009
through May 2011.  During this period, SAVARESE purchased 3,500
30 milligram oxycodone pills as follows:

| Date of Prescription Received | Prescriber | Number of Pills Prescribed | Date Filled | Pharmacy Used | Payment |
|---|---|---|---|---|---|
| 01/21/2009 | Anderson | 180 | 01/21/2009 | Ralph Place | Insurance |
| 02/24/2009 | Anderson | 180 | 02/24/2009 | Delco Drugs | Insurance |
| 03/26/2009 | Anderson | 180 | 03/26/2009 | Delco Drugs | Insurance |
| 04/20/2009 | Anderson | 180 | 04/29/2009 | Delco Drugs | Insurance |
| 06/03/2009 | Anderson | 180 | 06/03/2009 | Delco Drugs | Insurance |
| 07/08/2009 | Anderson | 180 | 07/08/2009 | Delco Drugs | Insurance |
| 08/06/2009 | Anderson | 180 | 08/06/2009 | Delco Drugs | Insurance |
| 09/16/2009 | Anderson | 180 | 09/16/2009 | Delco Drugs | Insurance |
| 10/21/2009 | Anderson | 180 | 10/21/2009 | Delco Drugs | Insurance |
| 05/27/2010 | Anderson | 180 | 05/27/2010 | Delco Drugs | Insurance |
| 06/30/2010 | Anderson | 180 | 06/27/2010 | Delco Drugs | Insurance |
| 07/28/2010 | Anderson | 180 | 07/28/2010 | Delco Drugs | Insurance |
| 08/27/2010 | Anderson | 180 | 08/27/2010 | Delco Drugs | Insurance |
| 09/29/2010 | Anderson | 180 | 09/29/2010 | Delco Drugs | Insurance |
| 10/29/2010 | Anderson | 180 | 10/29/2010 | Delco Drugs | Insurance |
| 12/01/2010 | Anderson | 180 | 12/01/2010 | Delco Drugs | Insurance |
| 12/28/2010 | Anderson | 180 | 12/28/2010 | Delco Drugs | Insurance |
| 02/26/2011 | Anderson | 180 | 02/26/2011 | Delco Drugs | Insurance |
| 03/24/2011 | Anderson | 180 | 03/24/2011 | Delco Drugs | Insurance |
| 04/21/2011 | Anderson | 180 | 04/21/2011 | Delco Drugs | Insurance |
| 05/17/2011 | Anderson | 180 | 04/21/2011 | Delco Drugs | Insurance |

Based on my experience, training and knowledge of this investigation to date, I believe that SAVARESE is involved in the illegal distribution of oxycodone pills. This belief is based on the quantity of oxycodone pills purchased by SAVARESE and the recorded prison telephone calls.

V. Probable Cause to Arrest LANCE MOSKOWTIZ

14. As discussed in greater detail above, recorded conversations between LANCE MOSKOWITZ and other members of the organization revealed LANCE's leadership role in the oxycodone distribution scheme.

VI.  Probable Cause to Search SUBJECT PREMISES

15.  THE PREMISES KNOWN AND DESCRIBED AS 20 TOPSIDE LANE, STATEN ISLAND, NEW YORK AND ANY CLOSED OR LOCKED CONTAINERS THEREIN (SUBJECT PREMISES #1), consists of a single family residence with tan stone and siding.  It has a white front door with an oval window in between two white garage doors.  The number "20" is located to the lower left of the front door.  This residence is owned by Stanley and Phyllis Moskowitz, the parents of defendant LANCE MOSKOWITZ.

16.  THE PREMISES KNOWN AND DESCRIBED AS A SAFE DEPOSIT BOX, NUMBER 228, LOCATED AT TD BANK, 4401 AMBOY ROAD, STATEN ISLAND, NEW YORK AND ANY CLOSED OR LOCKED CONTAINERS THEREIN ("SUBJECT PREMISES #2"); and THE PREMISES KNOWN AND DESCRIBED AS A SAFE DEPOSIT BOX, NUMBER 228, LOCATED AT TD BANK, 140 PAGE AVENUE, STATEN ISLAND, NEW YORK AND ANY CLOSED OR LOCKED CONTAINERS THEREIN, ("SUBJECT PREMISES #3").  Both SUBJECT PREMISES #2 and SUBJECT PREMISES #3 were opened in the name of Todd Moskowitz ("TODD").

17.  On May 5, 2011, the following recorded prison telephone call occurred between LANCE and Stanley Moskowitz ("STANLEY"):

STANLEY:  Yah yesterday we went to TD.

LANCE:  Where?

STANLEY:  TD TD Bank

18

LANCE:      Yesterday?

STANLEY:    Yeah

LANCE:      What does that mean?

STANLEY:    We we we emptied something

LANCE:      Oh the whole thing

STANLEY:    Yeah we opened it by by us

LANCE:      So you had it with you?

STANLEY:    No no it's hidden somewhere

LANCE:      okay

STANLEY:    At the house we we we can't even send you a
            picture that me and Todd took he took a
            picture of it with me.

### (Later in the call)

STANLEY:    No no no no no we may have to recount it but
            I'm I'm not gonna do it it's crazy

LANCE:      What's that?

STANLEY:    We're we're like 20 40 60 one way or the
            other it's like crazy you know to count

LANCE:      I know but I'm just saying but what he what
            he took I wanna make sure you know it's
            precise

STANLEY:    Yeah it's precise, believe me it's within
            it's within the limits

LANCE:      Did you have fun?

STANLEY:    At the end we were both laughing so hard we
            couldn't count anymore

LANCE:      You guys had a good time

STANLEY:    You know the big ones were all tagged but
            once we got to the small ones it was like oh
            my god when does this end? (I/A) like they
            got in the bank those flippers

LANCE:      Yeah what he just go with a shopping bag

STANLEY:    No a duffle one of the backpacks

LANCE:      He he went by himself?

STANLEY:    No I went with him what are you crazy.

Based on my experience, training and knowledge of this
investigation to date, I believe that STANLEY informed LANCE that
STANLEY removed currency from the LANCE's safe deposit box at TD
Bank, SUBJECT PREMISES #2, and hide the currency at STANLEY's
residence, SUBJECT PREMISES #1.   Further, DEA obtained
surveillance video from the TD Bank branch located at 4401 Amboy
Road, Staten Island in New York.   On May 5, 2011, Todd Moskowitz
and Stanley Moskowitz entered TD Bank with a red backpack.   The
video showed TODD entering the safe deposit box area with the red
backpack that appeared to be empty.   A short time later, TODD
exited the safe deposit box area with the red backpack which
appeared to contain something of appreciable weight.
Surveillance video also showed STANLEY waited for TODD in the
Customer Service Representative area of the bank.

     18.   Numerous recorded prison telephone calls between
LANCE and LORIANN reveal LORIANN informing LANCE whenever LORIANN
visited STANLEY to drop off money believed to be narcotics
proceeds.   For example, on February 18, 2011, the following

recorded prison telephone call occurred between LANCE and
LORIANN:

> LORIANN:   The old one is 925.  Do you want me to give
> daddy that?
>
> LANCE:     Just give him, yeah, give…
>
> LORIANN:   Yeah, that's fine, that's fine.

Based on my experience, training and knowledge of this
investigation to date, in these calls I believe that LORIANN
informed LANCE of the fact that LORIANN had provided LANCE's
share of the narcotics proceeds to STANLEY.  Surveillance
conducted by DEA agents revealed LORIANN on numerous occasions
visited the SUBJECT PREMISES #1.

19.  On May 25, 2011, in a recorded prison telephone
call LANCE's mother, Phyllis Moskowitz ("PHYLLIS"), informed
LANCE that TODD and PHYLLIS were at the bank and opened a safe
deposit box.  PHYLLIS informed LANCE that "we shut out the other
one and now opening new one."  Based on my experience, training
and knowledge of this investigation to date, I believe that
PHYLLIS informed LANCE that PHYLLIS moved LANCE's narcotics
proceeds from SUBJECT PREMISES #2 to SUBJECT PREMISES #3.
Further, a review of the surveillance video from the TD Bank
branch located at 126 Page Ave, Staten Island, NY on May 25,
2011, revealed Phyllis Moskowitz and Todd Moskowitz opening a
safe deposit box.  The surveillance video also revealed TODD

entered the bank with a red back pack, which appeared to contain something with appreciable weight. The video showed Todd MOSKOWITZ also entering the safe deposit box vault with the red back pack. Upon exiting the vault, TODD's red back pack was appeared noticeably thinner. In addition, TD Bank records showed TODD opened SUBJECT PREMISES #3 on May 25, 2011.

20. Based upon my training, experience and participation in narcotics investigations, as well as my conversations with other agents, I know the following: a) individuals involved in ongoing narcotics activity frequently maintain documentary evidence for long periods of time and are not likely to destroy or move such evidence quickly; b) such documents are frequently maintained where the traffickers have ready access to them or in secured places, such as safe deposit boxes; and c) narcotics traffickers commonly conceal narcotics, narcotics proceeds and related drug-dealing records in closed containers such as closets, boxes or safes in their residences and places of operation.

21. Based on my experience as a DEA Special Agent, it is my belief that, in light of the information learned in this investigation, there is probable cause to believe that the SUBJECT PREMISES are being used as stash locations for the Moskowitz drug trafficking organization. It has been my experience that such locations often contain the following:

1) quantities of oxycodone and other controlled substances; 2)

photographs, books and records including the names, addresses and

telephone numbers of narcotics purchasers and suppliers, which

books and records would reveal the identities of confederates in

narcotics trafficking; 3) currency used to purchase oxycodone or

which reflects the proceeds of sales of oxycodone, and 4) drug

paraphernalia including photographs, glassine bags, scales and

cutting agents.[9]

_____

[9] The United States Court of Appeals for the Second Circuit has
stated that "[n]arcotics conspiracies are the very paradigm of
the continuing enterprises for which courts have relaxed the
temporal requirements for non-staleness" with respect to the
issuance of search warrants. United States v. Rowell, 903 F.2d
899, 903 (2d Cir. 1990); see also Rivera v. United States, 928
F.2d 592, 602 (2d Cir. 1991) ("In investigations of ongoing
narcotics operations, we have held that, intervals of weeks or
months between the last described act and the application for a
warrant did not necessarily make the information stale.")
(collecting cases). Thus, where a search warrant affidavit has
established a widespread and ongoing narcotics enterprise, courts
have routinely found probable cause based on evidence that is
weeks or even months old. See, e.g., Rowell, 903 F.2d at 903 (18
month delay did not render information stale where the affidavit
established a continuous and ongoing narcotics conspiracy);
United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) (holding
that where a search warrant "was sought at the culmination of a
major investigation into ongoing, long-term" drug trafficking
activity, a five-week time lag in applying for the search warrant
did "not affect probable cause"); United States v. Beltempo, 675
F.2d 472, 477 (2d Cir. 1982) (finding that "a 52 day lapse would
not vitiate probable cause [for a search warrant] in an ongoing
scheme of illegal [drug] importation"); United States v. Enoa,
1993 WL 404154, *2 (S.D.N.Y. Oct. 7, 1993) (holding that with
respect to a search warrant on a drug stash house, a "four month
lapse is insufficient to suspend probable cause" where the
narcotics operation is "of a widespread and continuing nature");
United States v. Main Street Distributing Inc., 700 F. Supp. 655,
662 (E.D.N.Y. 1988) (one month old information not stale where
location to be searched was "not some temporary and easily-

23

WHEREFORE, I respectfully request that a search warrant issue allowing DEA Special Agents and other law enforcement agents, with proper assistance from other law enforcement officers, to search the SUBJECT PREMISES, and therein to seize the items listed in Attachment A, including the following:   1) quantities of oxycodone and other controlled substances, 2) money counters, photographs, books and records including the names, addresses and telephone numbers of narcotics purchasers and suppliers, which books and records would reveal the identities of confederates in narcotics trafficking or constitute evidence of the commission of  narcotics crimes, 3) currency used to purchase oxycodone or which reflects the proceeds of sales of oxycodone, and 4) drug paraphernalia including glassine bags, scales, and cutting agents; all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 841.

---

abandoned location"); see also, United States v. Feliz, 182 F.3d 82, 87 (1st Cir. 1999) (where evidence that defendant's "drug trafficking was of a continuous and ongoing nature" the fact that drug transactions described in search warrant affidavit took place three months prior to issuance of the warrant did not render them "stale"); United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991) (two year-old information relating to marijuana operation not stale); United States v. Hershenow, 680 F.2d 847, 853 (1st Cir. 1982) ("Where the information points to illegal activity of a continuous nature, the passage of several months between the observations in the affidavit and the issuance of the warrant will not render the information stale.").

FURTHER, I respectfully requests that arrest warrants be issued for LANCE MOSKOWITZ, LORIANN MOSKOWITZ, ANTHONY SAVARESE and JASON TORCHIO so that they may be dealt with according to law.

GIOVANNA CITTI
Special Agent
Drug Enforcement Administration

Sworn to before me this
25 Day of October, 2011

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

### Attachment "A"

1) Quantities of oxycodone and other controlled substances;

2) Money counters, photographs, books and records including the names, addresses and telephone numbers of narcotics purchasers and suppliers, which books and records would reveal the identities of confederates in narcotics trafficking or constitute evidence of the commission of narcotics crimes;

3) Currency used to purchase oxycodone or which reflects the proceeds of sales of oxycodone; and

4) Drug paraphernalia including glassine bags, scales, and cutting agents.